IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KURT THOMAS YOUNG,

      Plaintiff,

vs.                                    No. CIV 13-0064 RB/SCY

THE STATE OF NEW MEXICO,
SECOND JUDICIAL DISTRICT COURT,

      Defendants.

MEMORANDUM OPINION AND ORDER

      **THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment, filed on July 7, 2015.  (Doc. 52.)  The Court's jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court **GRANTS** this motion.

I.      **Background**

      On January 22, 2013, Plaintiff filed suit in this Court alleging that Defendants violated his rights by failing to provide him with working assistive-hearing devices during child custody hearings at the Second Judicial District Court in Albuquerque, New Mexico.  (Compl., Doc. 1.) In the Complaint, Plaintiff alleges discrimination in violation of the Americans with Disabilities Act ("ADA").[1]  (*Id*.)  Plaintiff seeks a declaratory judgment, damages, attorney fees, and costs. (*Id*.)  At the time the Complaint was filed, Plaintiff was represented by Attorney Alvin Garcia.

---

[1] On November 1, 2013, Plaintiff stipulated to the dismissal of his claims against Debra Ramirez, Marie Ward, and Robert Lewis, which included additional claims under the United States Constitution and Civil Rights Act.  (Doc. 20.)

(*Id*.)  On August 22, 2014, Mr. Garcia's unopposed motion to withdraw was granted.  (Doc. 28.)
Plaintiff has appeared pro se since August 22, 2014.  (*Id*.)

In their Motion for Summary Judgment, Defendants contend that they are entitled to
summary judgment because Defendants provided reasonable accommodations for Plaintiff's
hearing limitations and Plaintiff's refusal to accept reasonable accommodations precludes his
ADA claim.   (Doc. 52.)   Plaintiff did not file a response in opposition to the Motion for
Summary Judgment.

## II.    Legal Standard

Summary judgment is appropriate when the Court, viewing the record in the light most
favorable to the non-moving party, determines that "there is no genuine dispute over a material
fact and the moving party is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56.  In
cases where the moving party will not bear the burden of persuasion at trial, the moving party
bears the initial responsibility of identifying an absence of evidence to support the non-moving
party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party meets this burden, Rule 56(e) "requires the non-moving party to
go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to
interrogatories, and admissions on file,' designate specific facts showing that there is a genuine
issue for trial."  *Celotex*, 477 U.S. at 324.  "Where the record taken as a whole could not lead a
rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' "
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a summary judgment motion, the Court determines "whether the evidence
presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

2

that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. On summary judgment, the Court must view the facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Taylor*, 713 F.3d at 34.

## III.    Statement of Facts

Plaintiff alleges the violations occurred during five hearings at the Second Judicial District Court on November 30, 2011, January 3, 2012, February 23, 2012, May 24, 2012, and November 8, 2012. (Doc. 1.) The November 30, 2011 hearing was held before Domestic Violence Special Commissioner Debra Ramirez.[2] (Doc. 52-1, Def. Ex. D, Ramirez Aff.) Plaintiff did not request assistive-hearing devices before or during the hearing. (*Id.*) Judge Ramirez spoke "unusually loud" during the hearing and moved Plaintiff's table to within two feet of the bench. (*Id.*) Judge Ramirez asked Plaintiff throughout the hearing if he could hear and Plaintiff answered in the affirmative. (*Id.*) Judge Ramirez asked if Plaintiff needed a sign-language interpreter and Plaintiff responded, "No." (*Id.*) Judge Ramirez asked if Plaintiff wanted a continuance and Plaintiff responded, "No." (*Id.*)

The January 3, 2012 hearing was held before Judge Ramirez. (Ramirez Aff.) Judge Ramirez provided Plaintiff with assistive-hearing devices before the hearing. (*Id.*) Plaintiff claimed the devices had too much white noise, so Judge Ramirez's staff provided Plaintiff with

---

[2] In 2014, Debra Ramirez was appointed as a Second Judicial District Court Judge. (Doc. 52.)

two additional assistive-hearing devices.  (*Id*.)  Plaintiff claimed the additional assistive-hearing devices had too much white noise, but he did not request additional assistive-hearing devices. (*Id*.)  Judge Ramirez asked Plaintiff if he had any questions and Plaintiff responded, "No."  (*Id*.) Robert Lewis, the Court Clinician, moved from the witness chair and sat next to Plaintiff so Plaintiff could better understand his testimony.  (*Id*.)

The February 23, 2012 hearing was held before Family Court Hearing Officer Marie Ward.[3]  (Doc. 52-1, Def. Ex. E, Ward Aff.)  Judge Ward provided Plaintiff with assistive-hearing devices before the hearing.  (*Id.*)  Plaintiff did not make a pre-hearing request for assistive-hearing devices.  (*Id.*)  Plaintiff complained the assistive-hearing devices did not function properly.  (Doc. 52-1, Def. Ex. B, Tr. at 4.)  Plaintiff did not want the hearing to be rescheduled. (*Id.*)  Mr. Lewis moved from the witness chair and sat next to Plaintiff so Plaintiff could better understand his testimony.  (Doc. 52-1, Def. Ex. F, Lewis Aff.)  Mr. Lewis prepared a written statement summarizing his testimony and gave it to Plaintiff at the hearing.  (Doc. 52-2, Def. Ex. I.)  Judge Ward and Mr. Lewis told Plaintiff to raise his hand, or otherwise notify the court, if he could not understand what was being said during the hearing.  (Tr. at 4.)  Judge Ward prepared a detailed hearing officer report in order to facilitate Plaintiff's ability to object even after Plaintiff signed a stipulated order at the time of the hearing.  (Ward Aff.)

The May 24, 2012 hearing was held before Judge Ward in Judge Walker's courtroom. (Ward Aff.)  Judge Ward granted Plaintiff's request to hold the hearing in Judge Walker's courtroom because it has more advanced assistive-hearing equipment.  (*Id*.)  Judge Ward instructed Plaintiff to use the assistive-hearing equipment, but Plaintiff declined.  (*Id*.)  Plaintiff stated that Plaintiff had a hearing "app" that worked well.  (*Id*.)  Judge Ward's assistant Marisa

---

[3] In 2014 Marie Ward was appointed as a Second Judicial District Court Judge.  (Doc. 52.)

Salazar, noticed that Plaintiff wore the headphones on the side of his face.  (Doc. 52-2, Def. Ex. J, Salazar Aff.)

The November 8, 2012 hearing was held before Judge Ramirez.  Plaintiff's attorney did not request assistive-hearing devices before the hearing. (Ramirez Aff.)  The hearing was continued because Judge Ramirez could not provide assistive-hearing devices without an advance request.  (*Id.*)

The Second Judicial District Court has a Language Action Plan, which includes a section dedicated to equipment and interpretation for the deaf and hard-of-hearing.  (Doc. 52-2, Def. Ex. G.)  The Second Judicial District Court's Language Action Plan requires litigants to request assistive-hearing devices in advance of hearings.  (Doc. 52-2; Def. Ex G.)  Court personnel check the batteries of all assistive-hearing devices before courtroom use.  (Doc. 52-1, Def. Ex. H, Smith Aff.)

## IV.    Discussion

### A.    Pro se Plaintiff

Plaintiff appears pro se.  The Court, therefore, reviews his "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Notably, pro se status does not entitle Plaintiff to an application of different rules of civil procedure.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).  The Court may not assume that Plaintiff can prove facts that

have not been alleged, or that Defendants have violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The Court may not act as an advocate for a pro se litigant. *See Hall,* 935 F.2d at 1110.

> **B.**     **Lack of response**

Plaintiff did not file a response to the motion for summary judgment. Local Rule 7.1(b) provides that the "[f]ailure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(b). However, the Tenth Circuit has stated that when a party fails to respond to a motion for summary judgment, the district court "may consider the motion uncontested" as to that claim but "may not grant the motion as a matter of law simply because the nonmoving party failed to respond." *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003). Instead, the Court must undergo the traditional Rule 56 analysis, and may grant summary judgment only if the moving party has met its burden of demonstrating that no genuine issues of material fact exists and that it is entitled to summary judgment as a matter of law. *Id.* Thus, the Court will apply the Rule 56 summary judgment analysis to the facts of record.

> **C.**     **The ADA**

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the Act; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by

Title III.  *See Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004).  Plaintiff filed this suit pursuant to Title II of the ADA,[4] which provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

Title II of the ADA also provides that "the Attorney General shall promulgate regulations" that implement Title II.  42 U.S.C. § 12134(a).  Accordingly, the Department of Justice has promulgated regulations implementing Title II's prohibition against discrimination.  The regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7).

### D.     Defendants made reasonable modifications to avoid discrimination

Defendants contend that they are entitled to summary judgment because they "reasonably accommodated" Plaintiff's hearing limitations.  (Doc. 52.)  Before addressing Defendants' argument, it is necessary to clarify the terms utilized in ADA jurisprudence.  Title I of the ADA, in its statutory text, notes that discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).  Similarly, Title III, in its statutory text, notes that discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures." 42 U.S.C. § 12182(b)(2)(A)(ii).  There is no similar statutory language in Title II.

---

[4]  In his Complaint, Plaintiff also mentions Title III of the ADA.  (Compl. ¶ 68.)  Title III applies to public accommodations operated by private entities.  *See* 42 U.S.C. §§ 12181(7) and 12182.  In that Defendants are not private entities, Plaintiff has failed to state a claim under Title III of the ADA.

However, as noted *supra*, the Department of Justice regulations for Title II impose the requirement of "reasonable modifications" to policies, practices, or procedures to avoid the discrimination prohibited by Title II.  *Compare* 42 U.S.C. §§ 12111, 12112, *and* 42 U.S.C. § 12182, *with* 28 C.F.R. pt. 35.  Thus, the concept of reasonable accommodations is incorporated in Title II through the reasonable modifications required by 28 C.F.R. § 35.130(b)(7).

This equivalence is reflected in the case law.  As an example, the Tenth Circuit has stated that "Title II's use of the term 'reasonable modifications' is essentially equivalent to Title I's use of the term 'reasonable accommodation' "  *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1195 n.8 (10th Cir. 2007).  Indeed, courts use the terms interchangeably.  *See, e.g., Olmstead v. L.C.*, 527 U.S. 581, 592 (1999) (referring to § 35.130(b)(7) as the "reasonable-modifications regulation"); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85, 88 (2d Cir. 2004) (discussing "accommodations" provided in the context of a Title II case).  Thus, Defendants' arguments concerning reasonable accommodations are appropriate and applicable in this Title II case.

Notably, the ADA's "reasonable accommodations" principle does not require a public entity to employ any and all means to make auxiliary aids and services accessible to persons with disabilities, but only to make "reasonable modifications" that would not fundamentally alter the nature of the service or activity of the public entity or impose an undue burden.  *See Lane*, 541 U.S. at 531–32 ("Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities . . . . It requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided . . . . [or] impose an undue financial or administrative burden.").

In order to survive summary judgment on a Title II claim, the plaintiff must show a disputed material fact with respect to whether "(1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *See Cohon ex rel. Bass v. New Mexico Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (quoting *Robertson*, 500 F.3d at 1193); *see also, e.g., Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999). Defendants have presented evidence that Plaintiff was not excluded from participation in or denied the benefits of court services, programs, or activities during the hearings held on November 30, 2011, February 23, 2012, May 24, 2012, and November 8, 2012.

More specifically, Defendants have presented evidence that during the November 30, 2011 hearing, Judge Ramirez moved Plaintiff's table within two feet of the bench and spoke loudly. Judge Ramirez asked Plaintiff if he wanted a sign language interpreter or if he wanted a continuance and Plaintiff responded, "No." Judge Ramirez asked Plaintiff if he could hear and he responded in the affirmative. During the January 3, 2012, Judge Ramirez provided Plaintiff with assistive-hearing devices. Plaintiff claimed the devices had too much white noise, so Judge Ramirez's staff provided Plaintiff with two additional devices. Plaintiff claimed the additional devices had too much white noise, but he did not request additional devices. Judge Ramirez asked Plaintiff if he had any questions and Plaintiff responded, "No." Additionally, Mr. Lewis moved from the witness chair and sat next to Plaintiff so Plaintiff could better understand his testimony.

At the February 23, 2012 hearing Judge Ward provided Plaintiff with assistive-hearing

devices.  Plaintiff complained the devices did not function properly.  However, Plaintiff did not want the hearing to be rescheduled.  Mr. Lewis moved from the witness chair and sat next to Plaintiff so Plaintiff could better understand his testimony.  Mr. Lewis prepared a written statement summarizing his testimony and gave it to Plaintiff.  Judge Ward and Mr. Lewis told Plaintiff to raise his hand, or otherwise notify the court, if he could not understand what was being said during the hearing.  Judge Ward prepared a detailed hearing officer report in order to facilitate Plaintiff's ability to object even after Plaintiff signed a stipulated order at the time of the hearing.

Judge Ward granted Plaintiff's request to hold the May 24, 2012 hearing in Judge Walker's courtroom due to the availability of more advanced assistive-hearing equipment. Plaintiff declined to use the assistive-hearing equipment because he had a hearing "app" that worked well.  The November 8, 2012 hearing was continued because Plaintiff did not request assistive-hearing equipment.  Defendant's policy requires litigants to request assistive-hearing devices in advance of hearings.  Plaintiff failed to request assistive-hearing devices as required by the policy.  Nonetheless, Defendants made reasonable modifications to court procedures to accommodate Plaintiff's hearing condition.   Defendants have established that they made reasonable modifications to policies, practices, and procedures to avoid the discrimination prohibited by Title II of the ADA.

E.      **Plaintiff's ADA claim is precluded**

Additionally, Plaintiff's refusal to accept reasonable accommodations precludes his ADA claim.  *EEOC v. Agro Distribution*, *LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (stating that the ADA provides a right to reasonable accommodation, not to the plaintiff's preferred

accommodation); *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 28 (1st Cir. 2001) (same); *Schmidt v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 342, 344–45 (7th Cir.1996) (holding that employee's rejection of reasonable accommodations offered by employer "render[ed] him unqualified under the ADA"); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 802 (6th Cir. 1996) (holding that "plaintiff's refusal to accept available reasonable accommodations precluded her from arguing that other accommodations should have also been provided"); *Demarce v. Robinson Property Group Corp.*, 2013 WL 6528843 *3 (N.D. Miss. Dec. 12, 2013) (granting summary judgment on failure to accommodate claim where plaintiff failed to take advantage of reasonable accommodation). Here, Plaintiff rejected the reasonable accommodations offered to him.

While Defendants may not have provided Plaintiff with all of his requested accommodations, Defendants have demonstrated that the accommodations provided to Plaintiff were sufficient to give Plaintiff effective and meaningful access to the courts.  *See* 28 C.F.R. Pt. 35, App. A (noting that although deference should be given to the auxiliary aid requested, the public entity need not honor such request if it "can demonstrate that another effective means of communication exists"); *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1082 (11th Cir. 2007) (same); *Chisolm v. McManimon*, 275 F.3d 315, 326 n.10 (3d Cir. 2001) (same); *see also Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 887–88 (8th Cir. 2009) (holding that similar accommodations for a blind inmate to use law library did not violate the ADA); *Tucker v. Tennessee*, 539 F.3d 526, 533 (6th Cir. 2008) (stating that accommodation is not a violation of ADA, even if "not ideal," so long as it is reasonable and effective); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (stating that although consideration should be given to the individual's choice, "[n]othing in the ADA itself or its implementing

11

regulations dictates that a disabled individual *must* be provided with the type of auxiliary aid or service he requests" and that deference to the requests is "by no means required"); *Petersen v. Hastings Pub. Schs.*, 31 F.3d 705, 708–09 (8th Cir. 1994) (stating auxiliary aids need not be those chosen by individual if they are effective).  Indeed, similar accommodations have been found sufficient for litigants in the past.  *See Badillo-Santiago v. Naveira-Merly*, 378 F.3d 1, 7 (1st Cir. 2004).

The record indicates that Plaintiff was provided with assistive-hearing equipment but he declined to use it.  Plaintiff stated he had a hearing "app" that allowed him to hear the proceedings.  The record shows that court employees offered Plaintiff assistive-hearing devices but he wore the headphones in such a manner so as to render the equipment useless.

Construed in the light most favorable to Plaintiff, the evidence of record establishes that Plaintiff was not denied the benefits of services, programs, or activities of the Second Judicial District Court.  The evidence of record demonstrates that Defendants made modifications in court procedures that reasonably accommodated Plaintiff's hearing limitations.  Plaintiff rejected some or all of the reasonable accommodations offered to him.  Thus, Defendants satisfied their summary judgment burden.  Plaintiff presented no evidence to the contrary.  Under these circumstances, Defendants are entitled to summary judgment.

## V.     Conclusion

Plaintiff's pro se status does not excuse him from compliance with the rules.  Plaintiff failed to file a response in opposition to Defendants' Motion for Summary Judgment. Defendants satisfied their summary judgment burden of identifying an absence of evidence to support Plaintiff's case.  *See Celotex*, 477 U.S. at 325.  Once Defendants met this burden, Rule

56 required Plaintiff to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Plaintiff did not satisfy this requirement. Viewed in the light most favorable to Plaintiff, the evidence of record is so one-sided that Defendants must prevail as a matter of law. *See Anderson*, 477 U.S. at 251–52. Application of the relevant legal factors leads to the conclusion that Defendants' Motion for Summary Judgment should be granted.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 52) is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**